```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
NEW EARTHSHELL CORPORATION,                                             :
                                                                        :
                        Plaintiff,                                      :       14-CV-3602 (JMF)
                                                                        :
        -v-                                                             :       OPINION AND ORDER
                                                                        :
JOBOOKIT HOLDINGS LTD et al.,                                           :
                                                                        :
                        Defendants.                                     :
                                                                        :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/05/2015

JESSE M. FURMAN, United States District Judge:

Plaintiff New Earthshell Corporation ("New Earthshell" or "Plaintiff") brings this suit against Defendants Jobookit Holdings Ltd. ("Jobookit"), Viumbe, LLC ("Viumbe" and, together with Jobookit, the "Corporate Defendants"), and Rafi Shkolnik (together with the Corporate Defendants, "Defendants"), alleging breach of contract, fraud, and other related claims. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants move to dismiss the Third Amended Complaint ("Complaint") in its entirety and seek attorneys' fees. For the reasons explained below, Defendants' motion, including the request for attorneys' fees, is GRANTED.

## BACKGROUND

The following facts, taken from the Complaint and attached exhibits, are assumed to be true for purposes of this motion. *See, e.g.*, *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).

Viumbe is a digital media company that owns several websites. (Third Am. Compl. ("TAC") (Docket No. 13) ¶ 8). Selling advertising is its primary source of revenue. (*Id.*). In April 2014, New Earthshell sold Viumbe to Jobookit for $2.5 million. (*Id.* ¶ 9). Pursuant to the parties' purchase agreement (the "Purchase Agreement"), Jobookit paid New Earthshell $1

million at closing, and New Earthshell loaned Jobookit the remaining $1.5 million.  (*Id.* ¶ 9).

The loan, which was secured by Viumbe's equity and assets, was due twenty-four months after closing, although Jobookit had the right to extend it for another four months.  (*Id.* ¶¶ 10, 12).

At the same time that Jobookit was negotiating with New Earthshell, it was also negotiating with another company, Digital Ybrant Group ("Ybrant"), for the right to operate and manage Viumbe's websites.  (*Id.* ¶¶ 13-14).  Ultimately, Ybrant and Jobookit entered into an agreement — effective upon Jobookit's purchase of Viumbe — whereby Ybrant invested $1 million in Jobookit and agreed to manage Viumbe's web sites in exchange for shares of Jobookit and a varying percentage of the websites' advertising revenue.  (*Id.* ¶¶ 16-17; *id.*, Ex. C at 2). Specifically, Ybrant was entitled to seventy percent of the websites' advertising revenue until it had received $1 million, fifty percent of the revenue for two years after that, and thirty-five percent of the revenue thereafter.  (*Id.* ¶¶ 16-17; *id.*, Ex. C at 2).

New Earthshell admits that it knew that Jobookit was negotiating with Ybrant for the right to manage Viumbe's websites at least as early as March 2014.  (*Id.* ¶¶ 11, 14-15).  At that time, Jobookit filed a notice with the Israeli Securities Regulator and the Tel Aviv Stock Exchange stating that it and Ybrant had reached a memorandum of understanding providing that Ybrant would purchase $1 million of Jobookit's common stock in exchange for management rights to the leading website owned by an "American company" that Jobookit was acquiring. (*Id.* ¶ 14).  When Plaintiff asked Jobookit about the terms of the Ybrant agreement, however, Jobookit's Chief Executive Officer, Defendant Rafi Shkolnik, told Plaintiff that Ybrant would receive only thirty-five percent of Viumbe's revenue and that Ybrant's investment in Jobookit was an "equity" investment that would not be repaid.  (*Id.* ¶ 15).  Although Plaintiff asked to see a copy of the agreement between Jobookit and Ybrant, Shkolnik refused, citing a confidentiality

agreement.  (*Id.*).  Plaintiff alleges that, if it had known the true terms of Jobookit's deal with Ybrant, it never would have agreed to loan the $1.5 million to Jobookit.  (*Id.* ¶ 12).

Plaintiff filed this lawsuit on May 20, 2014, and alleges (1) fraud (against Jobookit and Shkolnik) (*Id.* ¶¶ 26-28; Docket No. 1); (2) securities fraud (against Jobookit and Shkolnik) (*Id.* ¶¶ 29-36); (3) negligent misrepresentation (against Jobookit and Shkolnik) (*Id.* ¶¶ 37-38); (4) breach of contract (against Jobookit and Viumbe) (*Id.* ¶¶ 39-43); (5) breach of the implied covenant of good faith and fair dealing (against all Defendants) (*Id.* ¶¶ 44-48); and (6) conversion (against Jobookit) (*Id.* ¶¶ 49-50).  The Court will address each claim in turn.

## DISCUSSION

A motion pursuant to Rule 12(b)(6) challenges the sufficiency of the allegations in the complaint.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  To survive the motion, the complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

### A.  Fraud and Negligent Misrepresentation

Plaintiff's first claims are for fraud and negligent misrepresentation.  To state a cause of action for fraud under New York law — which the parties agree applies in this case (*see, e.g.*, Defs.' Mot. To Dismiss Third Am. Compl. Pursuant Fed. R. Civ. P. 12(b)(6) ("Defs.' Mem.")

(Docket No. 15) 14-19 (citing New York law); Pl.'s Br. Opp'n Def.'s Mot. To Dismiss Third Am. Compl. ("Pl.'s Mem.") (Docket No. 18) 8-9, 13-15 (same)) — a plaintiff must allege "a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006) (internal quotation marks omitted). To state a claim for negligent misrepresentation, on the other hand, a plaintiff must allege "'(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007)). Thus, for each claim, a plaintiff must plead and prove reasonable reliance. "[W]hether a plaintiff has adequately pleaded justifiable reliance can be a proper subject for a motion to dismiss." *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 58 F. Supp. 2d 228, 259 (S.D.N.Y. 1999).

In this case, Plaintiff fails to plausibly allege reasonable reliance. Plaintiff maintains that Jobookit and Ybrant misrepresented "material facts of their revenue split with Viumbe, that Plaintiff would receive a first priority security interest in all of Viumbe's assets, Viumbe would not transfer Plaintiff's Collateral, Ybrant's investment was solely an 'equity' investment and Ybrant would not be entitled to be repaid." (TAC ¶ 27). Even accepting those allegations as true, however, Plaintiff has failed to plausibly plead that it justifiably relied on those misrepresentations. "[A]s a matter of law, a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it." *HSH*

4

*Nordbank AG v. UBS AG*, 941 N.Y.S.2d 59, 66 (App. Div. 1st Dep't 2012) (internal quotation marks omitted); *see also Global Minerals & Metals Corp. v. Holme*, 824 N.Y.S.2d 210, 215 (App. Div. 1st Dep't 2006) ("New York law imposes an affirmative duty on sophisticated investors to protect themselves from misrepresentations made during business acquisitions by investigating the details of the transactions and the business they are acquiring."). New Earthshell contends that the relevant facts were peculiarly within Defendants' knowledge and that it did everything it could to verify the details of the Ybrant transaction by asking Shkolnik about the terms of the Ybrant deal several times. (Pl.'s Mem. 8-9). But Plaintiff could have insisted on seeing the Ybrant contract before going through with the sale. Alternatively, if a confidentiality agreement did actually preclude Defendants from sharing the contract, Plaintiff could have "insert[ed] appropriate language in the [Purchase A]greement for its protection," such as a provision forbidding Jobookit from granting third parties the right to receive more than thirty-five percent of Viumbe's revenue in exchange for goods or services. *Global Minerals*, 824 N.Y.S.2d at 215-16; *see also Ventur Grp. LLC v. Finnerty*, 892 N.Y.S.2d 69, 70-71 (App. Div. 1st Dep't 2009) (finding that the plaintiff could not have justifiably relied on oral statements even in the face of a confidentiality agreement). Plaintiff did neither.

Equally unavailing is Plaintiff's claim that it justifiably relied on the public securities filings made in Israel. (Pl.'s Mem. 6). Those filings — which the Court may consider on a motion to dismiss, *see, e.g.*, *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) — stated that Ybrant and Jobookit had signed a Memorandum of Understanding, but did not mention that Ybrant would receive a percentage of Viumbe's revenue. (Decl. A. Jeff Ifrah, Esq. ("Ifrah Decl.") (Docket No. 16), Ex. D at 1). Because Plaintiff had been told about the possibility of a revenue split, however, any reliance on that silence would have been unreasonable. (TAC ¶ 16).

In short, Plaintiff fails to allege reasonable reliance. It follows that its fraud and negligent misrepresentation claims must be dismissed.[1]

## B. Securities Fraud

New Earthshell's securities fraud claim must also be dismissed for failure to allege justifiable reliance.[2] *See Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011); *Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005); *see also Abbey v. 3f Therapeutics, Inc.*, No. 06-CV-409 (KMW), 2009 WL 4333819, at *11 (S.D.N.Y. Dec. 2, 2009) ("Courts have held that an investor does not 'reasonably' rely on a misrepresentation . . . where the plaintiff was a 'sophisticated investor' who failed to take reasonable steps to access critical information related to the transaction in question."). In addition, the securities fraud claim fails as a matter of law because the loan to Jobookit does not qualify as a security. Although a note, like the one at issue here, is presumed to be a security, that presumption is rebutted where the note bears a "family resemblance" to one of several

---

[1] Even if Plaintiff had plausibly alleged reasonable reliance, its negligent misrepresentation claim would probably fail for failure to allege a "special relationship." Such a relationship arises when the defendant possesses unique or specialized expertise, or is in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified. *See Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996); *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 158 (2d Cir. 1995). Although the contours of the definition are not precise, courts have held that "the parties must enjoy a relationship of trust and reliance closer than that of the ordinary buyer and seller, and an arm's length business relationship is not enough to create that relationship." *Goodman Mfg. Co. v. Raytheon Co.*, No. 98-CV-2774 (LAP), 1999 WL 681382, at *15 (S.D.N.Y. Aug. 31, 1999) (citation and internal quotations omitted); *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 373 (S.D.N.Y. 1999). Given the arm's length commercial relationship between the parties in the instant case, it is likely that the type of relationship giving rise to a duty of care is not present here. The Court, however, need not and does not decide the issue.

[2] The Complaint does not state which provisions of the Securities Act of 1933 that Defendants allegedly violated. (TAC ¶¶ 29-36). In its memorandum of law, however, Plaintiff indicates that its claim is brought under Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. (Pl.'s Mem. 9-12).

judicially recognized exceptions.  *See, e.g.*, *Reves v. Ernst & Young*, 494 U.S. 56, 66-67 (1990); *Intelligent Digital Sys., LLC v. Visual Mgmt. Sys., Inc.*, 683 F. Supp. 2d 278, 283-84 (E.D.N.Y. 2010).  To determine whether a note fits into one of the exceptions, courts consider four factors: (1) the motivations prompting a reasonable seller and buyer to enter into the transaction; (2) the "plan of distribution"; (3) the reasonable expectations of the investing public; and (4) whether "some factor, such as the existence of another regulatory scheme, significantly reduces the risk of the instrument."  *Reves*, 494 U.S. at 66-67.

Substantially for the reasons explained in Defendants' memorandum of law, the note at issue here does not qualify as a security.  (Defs.' Mem. 19-23).  First, the loan was made for a commercial, rather than an investment purpose.  *See Intelligent Digital Sys.*, 683 F. Supp. 2d at 284-85.  Plaintiff alleges that it extended Jobookit a $1.5 million loan to cover a portion of Viumbe's purchase price.  (TAC ¶ 9).  While Plaintiff was entitled to interest, the Complaint does not allege that Plaintiff would receive equity, a percentage of Viumbe's profits, or any other stake in the ongoing success of the business.  (*Id.* ¶¶ 9-10).  Thus, in this case, "the motivation of the seller is not to invest in the future success of the buyer," as "the amount to be paid is contractually established, and must be paid, whether or not the buyer's business is positively affected by the purchase."  *Intelligent Digital Sys.*, 683 F. Supp. 2d at 284.  While there is a risk of default, "that default is not something that is unique to any 'investment-like' character of the purchase [of Viumbe], but is a risk attendant to any sale."  *Id.*  Second, there is no "common trading for speculation or investment," as the note merely reflects a single transaction and was not offered to the public.  *Reves*, 494 U.S. at 66.  Third, for the same reason, there is no "investing public."  *See id.*  And, fourth, while there may be no other factor reducing the risk of the note, "[b]ecause the result of the court's analysis of the first three factors weighs so heavily

7

against a finding that the Note is a security," the Court need not consider the last factor. *Intelligent Digital Sys.*, 683 F. Supp. 2d at 285.[3]

## C. Breach of Contract

Next, New Earthshell alleges that the Corporate Defendants breached the Purchase Agreement by "disposing of and/or diminishing the value of the Collateral pledged to Plaintiff as security for its Loan." (TAC ¶ 41). To establish a breach of contract under New York law, a plaintiff must show "(1) the existence of an agreement, (2) adequate performance of the contract by the claimant, (3) breach of contract by the accused, and (4) damages." *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 318 (S.D.N.Y. 2010) (internal quotation marks omitted). A written contract must be interpreted according to the parties' intent, which is "derived from the plain meaning of the language employed in the agreements." *In re Lehman Bros. Inc.*, No. 11-cv-6053 (KBF), 478 B.R. 570, 586 (S.D.N.Y. July 16, 2012) (internal quotation marks omitted). In a dispute over the meaning of a contract, the threshold question is whether the contract terms are ambiguous, *see, e.g.*, *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000), which is a question of law for the Court to decide on a claim-by-claim basis, *see, e.g.*, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 197 (2d Cir. 2005); *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 178 (2d Cir. 2004). A contract is unambiguous when it has "'a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of

---

[3] In its memorandum of law, Plaintiff argues that "Defendant committed securities fraud under section 10(b) and Rule 10b-5 by intentionally misrepresenting and concealing facts in the purchase of Plaintiff's membership interests in Viumbe." (Pl.'s Mem. 12). But there is no such allegation in the Complaint (*see* TAC ¶¶ 29-36), so the Court will not consider the argument. *See, e.g.*, *Ifill v. N.Y. State Court Officers Ass'n*, 655 F. Supp. 2d 382, 393 (S.D.N.Y. 2009) (stating that a plaintiff "may not amend his complaint to add new claims by raising them for the first time in his motion papers").

opinion.'" *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)).

Where a contract's language is unambiguous, a court may dismiss a breach of contract claim on a motion to dismiss. *See, e.g., Advanced Mktg. Grp. v. Bus. Payment Sys., LLC*, 300 F. App'x. 48, 49 (2d Cir. 2008); *see also, e.g.*, *Rounds v. Beacon Assoc. Mgmt. Corp.*, No. 09-cv-6910 (LBS), 2009 WL 4857622, at *3 (S.D.N.Y. Dec. 14, 2009) ("Where there is no ambiguity to a contract and the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law, and a claim turning on that interpretation may be resolved on a motion to dismiss." (internal quotation marks omitted)). But "when the language of a contract is ambiguous, its construction presents a question of fact, which of course precludes summary dismissal" on a Rule 12(b)(6) motion. *Crowley v. VisionMaker, LLC*, 512 F. Supp. 2d 144, 152 (S.D.N.Y. 2007) (internal quotation marks omitted); *accord, e.g.*, *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 55 (2d Cir. 2012) (explaining that "where the contract language creates ambiguity, extrinsic evidence as to the parties' intent may properly be considered, and in the context of a motion to dismiss, if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim" (internal quotation marks and citations omitted)).

In this case, the contract is unambiguous, and there is no provision prohibiting the Corporate Defendants from giving Ybrant the right to receive a percentage of Viumbe's revenue in exchange for managing the websites. Plaintiff contends that the contract with Ybrant violates Section 4.1(b) of the Purchase Agreement. That section provides that Viumbe's assets, including its "[d]eposit accounts and accounts receivable" and "all other contract rights or rights to the payment of money, insurance claims and proceeds," will serve as collateral for the loan. (Pl.'s

9

Mem. 14-15; Ifrah Decl., Ex. A at 3-4).  On its face, however, the provision says nothing about revenue.  Nor would it make sense to read Section 4.1(b) as treating all of Viumbe's revenue as collateral in light of other provisions in the contract.  *See In re AMR Corp.*, 730 F.3d 88, 99 (2d Cir. 2013) (noting that courts must "read contracts as a whole").  In Section 7.1 of the agreement, for example, the Corporate Defendants promise not to "sell, transfer, convey, assign or grant any interest in all or any part, of the Collateral." (Ifrah Decl., Ex. A at 6).  If Section 4.1(b) includes revenue, that provision would prevent Viumbe from operating as it would be unable to enter into any contracts or use revenue for normal expenses.

Additionally, the contract includes several specific limitations on Jobookit's operation of Viumbe, none of which prohibits Jobookit from giving third parties the right to receive a percentage of Viumbe's revenues.  (*See, e.g.*, Ifrah Decl., Ex. A at 6-7 (forbidding Viumbe from (1) issuing any new equity or debt securities, (2) permitting a change in the nature of the Company's business, (3) declaring dividends and (4) making loans to persons other than employees, among others)).[4]  Given that absence, it can be inferred that the parties did not intend to categorically prohibit Viumbe from entering into a revenue sharing agreement with another party.  *Cf. Gurney's Inn Resort & Spa Ltd. v. Benjamin*, 878 F. Supp. 2d 411, 425 (E.D.N.Y. 2012) ("Under the doctrine of *expressio unius* . . . , when certain persons or categories are specified in a contract, an intention to exclude all others may be inferred." (internal quotation marks omitted)).  Notably, Plaintiff essentially concedes as much by admitting that allowing Ybrant to receive thirty-five percent of Viumbe's revenue would not have violated the contract.

---

[4]     By contrast, the agreement specifically allows the Corporate Defendants to "grant licenses to use the Websites for the purpose of managing, marketing, promoting and generating revenues therefor in the ordinary course of the Company's business." (Ifrah Decl., Ex. A at 6).

(Pl.'s Mem. 15).  Under the terms of the contract, however, there is no distinction between a revenue sharing agreement for thirty-five percent and a revenue sharing agreement for seventy percent.  Thus, Plaintiff fails to allege a breach of the contract.

### D.  Conversion and Breach of the Covenant of Good Faith and Fair Dealing

The final two counts of the Complaint allege that Jobookit committed the tort of conversion and that all Defendants breached the implied covenant of good faith and fair dealing.  (TAC ¶¶ 44-50).  Both claims, however, are mere restatements of Plaintiff's contract and fraud claims.  For example, Plaintiff's conversion claim is based only on the $1.5 million that Jobookit allegedly obtained from Plaintiff "due to its fraudulent misrepresentation and concealment."  (TAC ¶ 50).  To the extent the claim is based on the breach of contract, it fails as a matter of law.  *See, e.g.*, *LaRoss Partners, LLC v. Contract 911 Inc.*, 874 F. Supp. 2d 147, 164-65 (E.D.N.Y. 2012).  To the extent it is based on Defendants' alleged fraud, it fails for the same reasons as Plaintiff's fraud claim.  *See Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 782 (S.D.N.Y. 2011) (listing elements of a conversion claim).  Similarly, in its implied covenant claim, Plaintiff alleges that Defendants "sidestep[ed] [their] obligations under, ignoring the limitations imposed by, and violating the Loan Documents."  (TAC ¶ 46).  It is well settled, however, that a claim for breach of the implied covenant "can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim and the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract."  *Rojas v. Don King Prods., Inc.*, No. 11-CV-8468 (KBF), 2012 WL 760336, at *3 (S.D.N.Y. Mar. 6, 2012) (internal quotations omitted); *see Amcan Holdings, Inc. v. Canadian Imperial Bank of*

*Comm.*, 894 N.Y.S.2d 47, 49-50 (App. Div. 1st Dep't 2010). Both claims must therefore be dismissed.[5]

### E. Attorneys' Fees

Defendants also seek an award of attorney's fees pursuant to Section 14.7 of the Purchase Agreement, which provides that "[i]n the event that any action is taken by a Party in connection with this Agreement, the losing party in such legal action . . . shall pay reasonable attorneys' fees to the prevailing party to the extent determined by such court." (Ifrah Decl., Ex. A at 13). Plaintiff does not dispute in its memorandum of law that, should the Court dismiss the Complaint, Defendants would be entitled to their reasonable fees. Nor could it. As Defendants won on the merits at the motion to dismiss stage of the litigation, they are unquestionably prevailing parties. *Cf, e.g.*, *Neroni v. Coccoma*, No. 13-CV-1340 (GLS), 2014 WL 3866307, at *2 (N.D.N.Y. Aug. 6, 2014) (finding in the Section 1983 context that, after the Court granted the defendants' motion to dismiss, they "then became the prevailing parties" within the meaning of that statute). Further, this case plainly qualifies as an "action . . . taken by a Party in connection

---

[5] Plaintiff suggests that its claims for conversion and breach of the implied covenant would not be duplicative of its contract claim if the contract claim fails. (*See, e.g.*, Pl.'s Mem. 15, 17). That is, Plaintiff indicates that it is effectively pleading the implied covenant and conversion claims in the alternative. Such claims, however, "are *not* in the alternative when they are based on the exact same allegations" as the breach of contract claim. *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 806 F. Supp. 2d 619, 624 (E.D.N.Y. 2011) (discussing claims for the breach of the covenant of good faith and fair dealing) (emphasis added). The question is whether the conversion and implied covenant claims sound in contract, not whether the contract at issue has actually been breached. Thus, notwithstanding the Court's dismissal of Plaintiff's breach of contract claim, the conversion and implied covenant claims must also be dismissed. *Id.*; *see also Transcience Corp. v. Big Time Toys, LLC*, No. 13-CV-6642 (ER), — F. Supp. 3d —, 2014 WL 4827878, at *9 (S.D.N.Y. Sept. 23, 2014) ("Whereas courts in this Circuit allow for alternative pleading of unjust enrichment and contract claims, conversion claims are routinely dismissed on Rule 12(b)(6) motions where duplicative of breach of contract claims."); *AJW Partners LLC v. Itronics Inc.*, 892 N.Y.S.2d 46, 568-69 (App. Div. 1st Dep't 2009) (dismissing a conversion claim as duplicative of a breach of contract claim that was also dismissed).

with [the loan] Agreement." Defendants are therefore entitled to their reasonable fees. *See, e.g.*, *Hooper Assoc., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989) (noting that, while the prevailing party in a legal action is generally not entitled to recover attorneys' fees, it may do so when "an award [of fees and costs] is authorized by agreement between the parties").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and the Complaint is DISMISSED in its entirety. Further, Defendants' request for reasonable attorneys' fees is GRANTED. Defendants shall submit an application for reasonable fees, with supporting contemporaneous documentation, within **two weeks** of the date of this Opinion and Order. Plaintiff must submit any opposition within **three weeks** of the date of this Opinion and Order.

The Clerk of Court is directed to terminate Docket No. 14 and to close the case.

SO ORDERED.

Date:  March 4, 2015
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

13